PONDER, Justice.
 

 In this suit the plaintiff, a building contractor, is seeking to recover from the defendant the remainder of the contract price for building a house and performing certain extra work agreed on between them. Plaintiff alleges full compliance with the contract.
 

 On September 13, 1940, plaintiff contracted to build a house for the defendant under plans and specifications prepared by a certain architect. The house was to be completed, by agreement between the parties, on January 27, 1941. Under the terms of the contract, the defendant was to receive five dollars per day as liquidated damages for each day’s delay. The plaintiff also agreed to construct a garage and to do certain extra work on the premises for the defendant.
 

 The plaintiff notified the defendant on April 18, 1941, that the building was completed and ready for acceptance. On April 21 the defendant and the architect inspected the building and submitted to the plaintiff a detailed list of what they considered to be defects, errors, and unfinished construction ; and the defendant notified the plaintiff on April 30 that he refused to accept the work. On May 22 the plaintiff requested a'ruling of the architect, in accordance with the Standard Form of the American Institute of Architects. The architect rendered a ruling on June 3, recommending a deduction of $400 to cover cost of correcting certain defects in the building, and recommending approval of charges for certain extras and the reduction or denial of charges for other extras.
 

 The plaintiff refused to accept this ruling and on June 4 made formal demand on the defendant for an arbitration. He thereupon appointed his arbitrator, and the defendant appointed an arbitrator on June 5. The arbitrators could not agree on a third arbitrator.
 

 On June 23 the defendant notified the plaintiff that he intended to take over the building and complete all the unfinished construction as well as correct all defects and errors not substantially complying with the contract. He requested the plaintiff to hand over the keys, and informed him that the letter was to serve as a three-day notice, as provided in the contract.
 

 On June 27 the plaintiff secured a restraining order against the defendant to prevent him from occupying the building and undertaking the work. The restraining order was continued from time to time. A third arbitrator was finally secured on July 29, an inspection was made by the three arbitrators, and the temporary restraining order was dissolved on July 31.
 

 The defendant took possession of the 'building on August 1, 1941. Some time thereafter the arbitrators met, but failed to complete their hearing on account of a
 
 *974
 
 dispute between the parties as to who should advance the cost of taking the testimony at such hearing.
 

 The plaintiff brought this suit, seeking to recover $3,699.63 as the balance of the original building contract, $1,322.60 for certain extra work performed, and $1 for the recordation of a lien, making a total of $5,023.23. By way of answer and in reconvention the defendant asked for the rejection'of plaintiff’s demand and for a judgment against the plaintiff in the sum of $657.30. Upon trial, the lower court gave judgment in favor of the plaintiff in the full sum of $4,255.35, with 5% interest thereon from April 18, 1941, until paid.
 

 As we gather it, the principal dispute between the parties is whether or not the building was erected in substantial compliance with the contract, the extra work performed in accordance with their agreement, and the amount of demurrage to which the defendant might be entitled.
 

 There seems to be no dispute that the balance due under the original contract is $3,699.63 if the building was constructed in substantial compliance with the contract. There is a small discrepancy between the parties, in the amount of $137.64, for the extra work performed, if it complied substantially with their agreement. After a careful consideration of each item, the lower court arrived at a figure of $1,204.72 as being the balance due to plaintiff for extras. We would not feel justified in disturbing the lower court on the extra items.
 

 As to whether or not the work was completed in substantial compliance with the contract, the evidence is conflicting; but the photographs of the defects in the construction and the finished work convince us that the building was not erected and completed in substantial compliance with the contract. The judgment of the district court allowed the defendant a reduction of $100 for defective papering, $150 for defective outside painting, and $400 for demurrage.
 

 Insofar as the demurrage is concerned, we think the defendant is entitled to demurrage at $5 per day from January 27, 1941, the time the building was to have been completed under the contract, until the defendant obtained possession of the building on August 1, 1941. The building was not completed in substantial compliance with the contract when the plaintiff tendered it to the defendant on April 18, 1941. The defects in construction and other errors were not corrected, but the plaintiff secured a restraining order preventing the defendant from correcting them, which restraining order remained in effect until July 31. Under such circumstances the defendant is entitled to the demurrage up to August 1, which amounts to $925.
 

 The allowance of $100 for the defective papering is not, in our opinion, sufficient. There were some- 11 rooms in the building and the photographs in the record show that the paper was not only mismatched, but poorly applied. According to
 
 *976
 
 the record, it would have cost the defendant approximately $35 per room to repaper properly. We think the defendant is entitled to have the allowance of $100 for the defective papering increased to the amount of $385.
 

 The defendant should be allowed $100 to cover his cost for correcting the defective work in the basement or heater room, for the reason that it took this amount to properly drain the basement after it was tendered by the contractor.
 

 The photographs show that an excessive number of face nails were used in the floors of the building whereas the contract called for floors to be completely blind nailed. The evidence shows that the defendant refloored the lower floor because of the excessive face nailing. It is difficult from the evidence to arrive at a correct amount to allow the defendant, but taking it as a whole he should be allowed $250 for this item.
 

 Insofar as the outside painting of the building is concerned, the allowance of $150 by the District Court appears to be correct.
 

 A fair estimate of the amount that the defendant should be allowed, in our opinion, for the other defects (consisting of a defective support column, improperly secured floor joists, a crack in the outside wall, splash pans for vents, and various other defects) is the sum of $500.
 

 We accept the amounts allowed the contractor by the district court subject to the foregoing adjustments, as we believe the defendant was not allowed sufficient deductions on account of defective workmanship. We therefore allow the plaintiff the following:
 

 Balance due on contract.. $3,699.63
 

 For extras ................ 1,204.72
 

 For-recording fee ........ 1.00
 

 Total ............................ $4,905.35
 

 From this amount the defendant is entitled to a deduction for the following items:
 

 Demurrage, from January 27, 1941 to August 1, 1941, at $5.00 per day..., $ 925.00
 

 For repapering ........... 385.00
 

 For draining basement ... 100.00
 

 For reflooring ............ 250.00
 

 For outside painting..... 150.00
 

 For other corrections and repairs .................. 500.00
 

 Total ........................... 2,310.00
 

 Balance due .................................. $2,595.35
 

 For the reasons assigned the judgment of the lower court is amended so as to award the plaintiff $2,595.35, with legal interest from August 1, 1941, until. paid; the cost of appeal to be paid by the plaintiff and all other costs to he paid by the defendant.