389 So.2d 834 (1980)
A. A. SOLLAY, Plaintiff and Appellee,
v.
SOLLAY FOUNDATION & DRILLING, INC., Defendant and Appellant.
No. 7777.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
*835 Hunt, Godwin, Painter & Roddy, Fred R. Godwin, Lake Charles, for plaintiff-appellee.
Camp, Carmouche, Palmer, Barsh & Hunter, Adam Ortego, Lake Charles, for defendant-appellant.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
*836 CULPEPPER, Judge.
The plaintiff, A. A. Sollay, a former director, stockholder and employee of the defendant corporation, Sollay Foundation & Drilling, Inc., sues for salary, vacation pay and bonuses, and penalty wages and attorney's fees under LSA-R.S. 23:632. By supplemental and amending petition, plaintiff seeks liquidated damages and attorney's fees from the defendant corporation, Florence H. Sollay, Allister C. Sollay and Alta A. Baker, jointly and in solido, in the total amount of $125,000 for violation of a stock redemption plan and agreement entered into between the parties. Plaintiff's wife, Mrs. Norma M. Sollay, also a former director of the corporation, joined her husband in the suit for liquidated damages and attorney's fees. The trial court awarded plaintiff $3,583 as the balance due on his salary and vacation pay, plus $2,313 on his bonus. The claim for penalty wages and attorney's fees was denied. Plaintiff and his wife together were also awarded $25,000 in liquidated damages plus $5,000 attorney's fees under the redemption contract. From this judgment, defendants appeal. Plaintiffs answered the appeal, seeking (1) reasonable attorney's fees (not penalty wages) under LSA-R.S. 23:632, (2) an increase in the bonus award to $18,850 and (3) an increase in liquidated damages to $125,000 each.
The issues on appeal are: (1) Should attorney's fees be awarded under LSA-R.S. 23:632? (2) Is plaintiff entitled to a bonus, and, if so, how much? (3) Did defendants violate certain provisions of the stock redemption agreement, thus entitling plaintiff to liquidated damages and attorney's fees? (4) If so, what is the amount of liquidated damages due?
This lengthy and protracted litigation involves a closely held corporation, formerly Sollay Brothers, Inc., owned by two families in Lake Charles, Louisiana. The sole directors and stockholders of the corporation were plaintiff, A. A. Sollay, and his brother, C. B. Sollay, and their respective wives. Ownership of the corporation was equally divided between each family. The control and management of the business was entirely handled by the two brothers. In September of 1974, C. B. Sollay, president of Sollay Brothers, Inc., died. On November 12, 1974, the widow and heirs of C. B. Sollay secured the appointment of a temporary receiver. On December 18, 1974, the receiver terminated A. A. Sollay's active employment with the corporation. On June 5, 1975, plaintiff brought this suit.

THE CLAIM FOR WAGES AND ATTORNEY'S FEES UNDER LA. R.S. 23:632
After his termination by the temporary receiver, plaintiff made written demand for payment of the balance of his salary, vacation pay and bonus. The trial court, finding proper demand had been made, held plaintiff was entitled to $3,573 in unpaid wages and vacation time, but denied penalty wages and attorney's fees due to equitable considerations. Plaintiff now contends the trial court erred in denying his claim for attorney's fees. In his answer to the appeal, plaintiff does not seek penalty wages.
LSA-R.S. 23:632, as amended in 1964, provides in pertinent part that "Reasonable attorney's fees shall be allowed the laborer or employee ... in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
Prior to the 1964 amendment to this section, equitable defenses of the employer were allowed to defeat the claim for attorney's fees in an employee's suit for unpaid wages. The section as amended now requires the payment of attorney's fees despite any good faith defenses of the employer, provided the employee's suit be "well-founded." See Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La. 1978) and Letulle v. S & E Oil Company, Inc., 387 So.2d 703 (La.App. 3rd Cir. 1980). In the instant case, plaintiff was dismissed without receiving his full monthly salary for November and part of December. His suit for wages is clearly well-founded. Accordingly, *837 he is entitled to reasonable attorney's fees, which we fix in the sum of $1,000.
Appellants urge on appeal that plaintiff cannot recover against the corporation for his unpaid wages for the reason that he was dismissed by a court-appointed receiver, who is a ministerial officer and representative of the court rather than of the corporation. See General Motors Truck Company of Louisiana v. Caddo Transfer & Warehouse Company, 179 So. 843 (La.1938). Appellants contend the corporation cannot be responsible for the acts of the receiver in dismissing plaintiff.
Appellants' argument may have had merit had the corporation been placed in permanent receivership. In the present case, however, Sollay Brothers, Inc. was never declared in dissolution, and only a temporary receiver was appointed. The proceedings for temporary receivership were dismissed after a short time, and the temporary receiver was discharged. Pretermitting any lengthy discussion of the legal distinctions between temporary and permanent receivers, we simply note that the corporation is now a solvent, ongoing concern and is the proper party to respond to plaintiff's claim for wages.

PLAINTIFF'S CLAIM FOR BONUS
The evidence shows that beginning with the fiscal year of 1966 through 1974, plaintiff and his brother each received a bonus of 25% of the net profits of the corporation. This bonus was in addition to a base salary. Proof of authorization of this bonus is evidenced by an unsigned copy of minutes of a meeting of the board of directors of the corporation held in 1963. Appellants do not deny that bonus payments were made annually thereafter as provided in the resolution. They argue, however, that there was no formal board meeting and that payment of the bonus throughout the ensuing years was simply an unwritten policy, which does not continue after the death of a principal stockholder.
The question of the validity and authorization of the 1965 meeting, in our opinion, yields to the fact that for a period of over eight years such bonus payments were in fact made and acquiesced in by the corporation. Defendants are now estopped to deny the authorization of the bonus. See Acadian Production Corporation of Louisiana v. Tennant, 63 So.2d 343 (La.1953).
The next issue is the method of computation of the pro rata amount of bonus to which plaintiff is entitled. The fiscal year of the corporation ended on September 30 of each year. Plaintiff was discharged by the receiver on December 18, 1974. Thus, he worked a total of 79 days during the fiscal year that started on October 1, 1974. Although there is some question about its correctness, a profit and loss statement of the corporation for the first quarter, ending December 31, 1974, showed a net profit of $86,221. Plaintiff contends his bonus should be based on this first quarter net profit. Thus, he contends he is entitled to 79/92 of 25% of $86,221, or the sum of $18,509.
The trial judge found the evidence showed the bonus paid in previous years was based on the net profit for the full fiscal year, not the month, or the quarter, or six months, or any other period. C. B. Sollay died in September of 1974, just prior to the end of the fiscal year, and his bonus was paid on the basis of the net profit for the full fiscal year of 1974. The trial judge concluded it was the intention of the parties that the bonus be paid on the basis of the full fiscal year, rather than any other period. We find no manifest error in this factual conclusion.
On this basis, the trial judge found that the net profit of the corporation for the fiscal year beginning October 1, 1974 was $42,754. In computing plaintiff's pro rata share of this net profit, the trial judge awarded 79/65 of 25% of $42,754, thus producing the figure of $2,313, representing the bonus to which plaintiff is entitled. We find no manifest error in these conclusions. The judgment on rehearing (Tr. 248) computed 25% of $42,574 as $11,156, but this is merely a typographical error.
*838 Plaintiff cites Hodges v. Decoteau, 314 So.2d 500 (La.App. 1st Cir. 1975) in which the plaintiff was employed on a monthly salary of $1,000 plus 50% of the corporation's profits. Plaintiff was terminated in July. The court affirmed the jury award basing plaintiff's bonus on the net profits for the portion of the year during which he worked. We have no quarrel with the decision in Hodges. However, the question in each of these cases is the construction of the agreement in accordance with the intention of the parties. This is an issue of fact. We find no manifest error in the finding of fact by the trial judge in this regard in the present case.

THE CLAIM FOR LIQUIDATED DAMAGES AND ATTORNEY'S FEES RESULTING FROM THE STOCK REDEMPTION PLAN AND AGREEMENT
Following his dismissal by the temporary receiver on December 18, 1974, plaintiff and the widow and heirs of C. B. Sollay entered into a stock redemption plan and agreement on February 6, 1975. As a result of this agreement, A. A. Sollay and his wife transferred all their stock in the corporation to the succession of C. B. Sollay. Plaintiff's claim for damages is based on two paragraphs of the agreement; namely 14 and 15 which read:
"14. Within 12 months following the redemption, the redeeming shareholder shall cause Sollay Brothers, Inc. and Sollay Brothers of Texas, Inc. to change their names in such a manner as to delete the words `Brothers', and to insert a word or words descriptive of the corporation's business."
"15. Any of the corporations or any of the individuals who are parties to this plan and agreement shall have the option to sue for damages for any breach of this agreement or to sue for specific performance, and any individual or any of the corporations who fail to comply with the terms of this agreement shall be obligated to pay reasonable attorney's fees and costs incurred in enforcing the agreement, and in addition to any damages or specific performance, shall pay an additional penalty sum to the grieved parties in the amount of $25,000."
The deletion of the word "Brothers" was to be accomplished by February 6, 1976. Within this time, the name of the corporation was changed with the secretary of state from Sollay Brothers, Inc. v. Sollay Foundation & Drilling, Inc. and the checking account name and the name on the letterheads and envelopes was changed. The present dispute centers on the continued use by Sollay Foundation & Drilling, Inc. of the telephone listing in the Lake Charles telephone directory as "Sollay Brothers Foundation Drilling, Inc." in the March, 1976, October 1976 and November 1977 telephone directories. Plaintiff also complains of a sign at the corporation's office in Baton Rouge containing the words "Sollay Brothers Foundations", which was allowed to remain up until sometime in April of 1976 with the knowledge of the corporation's president, John B. Baker.
At the trial there was conflicting testimony as to whether or not South Central Bell had been notified of the change of name. Mr. Baker testified that, following the agreement, he called the company several times and requested that the change be made. Ms. Louise Lominac, supervisor for the business listings department at the Lake Charles telephone office, testified that a change of listing is usually made within three days after the request, and that, in her opinion, it was very unlikely the company would have made the same error on three successive listings had a request in fact been received. The trial judge, obviously impressed with the testimony of Ms. Lominac, found the contract had been breached and held in favor of plaintiff. We agree with the trial court that in view of the rather severe penalty imposed for failure to completely effectuate the name change, it was incumbent upon defendants-appellants to take further action to insure the change was accomplished. We find no manifest error in these factual conclusions of the trial judge.
*839 After oral arguments in our Court, defendants filed a supplemental brief raising a new argument not previously urged. They contend that a putting in default is a necessary condition before plaintiffs can recover the liquidated damages stipulated in the contract. For authority they cite LSA-C.C. Article 2126, which is in the section of the code dealing with penalty clauses:
"Art. 2126. Whether the principal obligation contain, or do not contain, a term in which it is to be fulfilled, the penalty is forfeited only when he who has obligated himself either to deliver, to take, or to do, is in default."
In answer to defendants' supplemental brief, plaintiffs contend that the listing of the name of Sollay Brothers Foundation, Inc. in the phone book and on the sign in Baton Rouge constituted an active violation of the contract, and, therefore, no putting in default was necessary. LSA-C.C. Article 1932.
The contract specifically required the redeeming shareholder to have the words "Brothers" deleted from the corporate name by February 6, 1976. Defendants failed to do so. We agree with defendants that this was a passive breach.
Although we find the breach here to be passive, this case falls within one of the exceptions listed in LSA-C.C. Article 1933. That article reads in pertinent part:
"Art. 1933. When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.
"The rules contained in this and the preceding articles, however, are subject to the following exceptions and modifications:
"1. When the thing to be given or done by the contract was of such a nature, that it could only be given or done within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in legal delay to entitle the creditor to damages."
Several early cases have construed this exception to mean that in contracts stipulating that they must be executed within a specified time, or where time is of the essence, a putting in default is not necessary. McMillan & Company v. Mills, 3 La.App. 9 (1925); Federal Signs System v. Groff, App., 1923 Orl. NO 9086. This is true where a specified time for performing the obligation expires without performance. Brown Carriage Company v. Coreil, 7 La. App. 411 (1928).
Moreover, in the present case, once the 12-month period had passed without the required change of name in the telephone directory, it was impossible for defendants to comply with the contract. They could not recover all of the telephone directories. Thus, a putting in default would have had no effect. It is well settled that the law does not require a putting in default when such action would be a vain, futile and useless gesture. Voss v. Roach, 35 So.2d 142 (La.App. 2d Cir. 1948).
Defendants' final contention is that the penalty award should have been modified by the trial judge because they had substantially complied with the provisions of paragraph 14. They rely on Civil Code Article 2127 which reads:
"Art. 2127. The penalty may be modified by the judge, when the principal obligation has been partly executed, except in case of a contrary agreement."
The trial judge apparently attached little significance to the changes defendants had made and their attempts to have the telephone company correctly list the new name of the corporation. As noted by the judge, the purpose of the change of the name was to prevent the corporation from trading under its former name. Not changing the name in the phone directory surely had the most detrimental effect. We find no manifest error in the factual conclusions of the trial judge.
In their answer to the appeal, plaintiff and his wife contend they are each entitled to the sum of $25,000 as liquidated damages against each of the four defendants, Sollay Foundation Drilling, Inc., Florence *840 H. Sollay, Allister C. Sollay, and Alta A. Baker, and in addition the sum of $25,000 from the three individuals jointly, as widow and heirs of C. B. Sollay, for a total of $125,000 each to the plaintiffs. We find no merit in this argument. The above quoted portion of the agreement states "the grieved (sic) parties" receive $25,000 in liquidated damages. We agree with the construction of the agreement by the trial judge, that plaintiff and his wife are together entitled to $25,000 liquidated damages.
For the reasons assigned, the judgment appealed is amended to increase the award in favor of A. A. Sollay and against the defendant, Sollay Foundation Drilling, Inc. by the sum of $1,000, representing reasonable attorney's fees under LSA-R.S. 23:632. Otherwise, the judgment appealed is affirmed.
AFFIRMED, AS AMENDED.